UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAURA A. ADAMS, )<br>)<br>　　Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, *sued as Kilolo Kijakazi,* )<br>*Commissioner of Social Security,*[1] )<br>)<br>　　Defendant. ) | CAUSE NO.  1:20-cv-00471-SLC |

## OPINION AND ORDER

Plaintiff Laura A. Adams appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB").  (ECF 1).  For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL HISTORY

Adams applied for benefits on December 7, 2017, alleging disability beginning February 10, 2015.  (ECF 16 Administrative Record ("AR") 15, 179-89).  Adams's claim was denied initially and upon reconsideration.  (AR 66-93).  After a timely request (AR 114-15), a hearing was held on October 24, 2019, before administrative law judge ("ALJ") Kathleen Winters, at which Adams, represented by counsel, and a vocational expert ("VE") testified (AR 36-64).  On August 28, 2019, the ALJ rendered an unfavorable decision to Adams, concluding that she was

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments. (AR 15-29). Adams's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Adams filed a complaint with this Court in December 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Adams alleges that the ALJ: (1) failed to properly assess her subjective symptoms, (2) failed to properly account for all of her limitations in the residual functional capacity ("RFC"), and (3) erred at step five in accepting the VE's numbers and job specifications. (ECF 20 at 9-24). Adams filed her opening brief on September 24, 2021, and the Commissioner timely filed a response brief on October 12, 2021. (ECF 20, 21). Adams, however, did not file a reply brief, and her time to do so has now passed. (*See* ECF 19).

At the time of the ALJ's decision, Adams was forty-eight years old (AR 177); and had completed high school, attended two years of college, and obtained emergency medical training and training as a certified nursing assistant (AR 216). She had past relevant work as an emergency medical technician, certified nurse's assistant, and a phlebotomist. (AR 27; *see* AR 216). In her application, Adams alleged disability due a failed back surgery, persistent left sciatica, hypothyroidism, peripheral neuropathy, exogenous hormone treatment, and adult attention deficit disorder (ADD). (AR 215).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

#### A.  The Law

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work,[2] and (5) whether she is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On August 28, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-29). At step one, the ALJ noted that Adams had worked after her alleged onset date of February 10, 2015, but the work did not rise to the level of substantial gainful activity. (AR 17). At step two, the ALJ found that Adams had the following severe impairments: degenerative disc disease of the spine T11-L1; and status-post right-sided lumbar spine surgery, with radiculopathy, and mild degenerative disc disease. (*Id.*).

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

At step three, the ALJ concluded that Adams did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 20). The ALJ assigned Adams the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she can stand and/or walk for two hours and can sit for six hours in an 8-hour workday; she can occasionally climb ramps and stairs, stoop, knee[l], crouch, or crawl; can never climb ladders, ropes, or scaffolds or balance. Work with an option to sit or stand, changing positions no more frequently than every 30 minutes, while remaining on task.

(AR 21). The ALJ found at step four that Adams was unable to perform any past relevant work. (AR 27). At step five, the ALJ found that unskilled, sedentary jobs exist in significant numbers in the national economy that Adams could perform. (AR 28). Therefore, Adams's application for DIB was denied. (AR 29).

### C. Subjective Symptoms

Adams asserts that the ALJ failed to properly assess her subjective symptoms. "In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will

be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms. These factors include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; and any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2017 WL 5180304, at *4.

The ALJ found that Adams's subjective symptoms were "inconsistent with the longitudinal medical evidence of record." (AR 22). The ALJ noted that reports from a previous employer and Adams's recreational and daily activities contradicted her claims. (*Id.*). The ALJ also found that Adams's treatment notes reflect symptoms consistent with the imaging, and that they indicate she "retains significant functional abilities throughout," despite her subjective complaints of pain. (AR 23). The ALJ relied on the imaging which showed improvement in Adams's spine after surgery and no nerve root impingement. (*Id.*). The ALJ also observed that additional MRIs noted only mild degenerative changes and decreased bulging. (*Id.*). Adams underwent surgery in March 2015 to alleviate pressure on her nerve root, followed by physical

therapy. (*Id.*). The ALJ found that despite continued complaints of pain and reduced lumbar range of motion limited by pain symptoms, Adams "regularly exhibited normal 5/5 strength, intact sensation and reflexes throughout," and that her antalgic gait improved during her recovery from recovery. (*Id.*).

Adams takes particular issue with the ALJ's reliance on a previous employer's report of her job performance. The ALJ noted that this report stated that Adams did not exhibit any physical limitations in her ability to perform the job, she did not require any unusual amounts of breaks or rest periods, and she did not require physical accommodations to perform the job. (AR 22). The ALJ also noted that Adams testified to quitting because she could not perform the work, but the report from the employer states that she resigned due to unforeseen circumstances in her family. (*Id.*). Adams asserts that the ALJ failed to consider that she was only working fourteen hours a week, that she was only employed for two months, and that she was still in training when her employment ended. Adams argues that the ALJ did not consider that a part-time employee may not need extra absences or breaks, but a full-time employee may. However, the ALJ did not use this report alone to find that Adams was capable of full time work. Rather, the ALJ noted that this report was inconsistent with Adams's claims that she left the job due to her physical limitations. (*Id.*). The ALJ also found it inconsistent with Adams's claim that she would require extra breaks or absences. (*Id.*). The ALJ acknowledges that Adams's work was part-time, and the ALJ did not improperly use this report alone in finding her not disabled. *See Lott v. Colvin*, 541 F. App'x 702, 706-07 (7th Cir. 2013) (finding the ALJ did not err in relying on the plaintiff's part-time job in finding the plaintiff's subjective complaints inconsistent with the record).

Adams also asserts that the ALJ erred in considering the reports that she was able to engage in activities such as gardening, camping, walking in the woods, and lifting her grandchildren. Adams alleges that her ability to care for her grandchildren is not a valid reason for disbelieving a disability claimant, citing *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). However, the crux of *Gentle* focuses on the failure of the ALJ to consider the help the plaintiff had in caring for her children when she was in significant pain despite needing to care for her child. Here, the ALJ simply stated that Adams's ability to lift her grandchildren contradicted her testimony to being unable to lift a half gallon of milk. (AR 22). The ALJ did not err in finding that Adams's ability to lift her grandchildren contradicted her claims and subjective symptoms. Even if the ALJ's reliance on Adams's ability to take care of her grandchildren was in error, that error was harmless, as this was only one small piece of evidence that the ALJ relied on in finding her subjective symptoms inconsistent with the medical evidence. *See Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination).

Adams further alleges that the only reason that camping, gardening, and walking in the woods were mentioned in treatment notes is because they caused exacerbation of her symptoms, and therefore were activities beyond her functional ability. However, the treatment notes cited by the ALJ do not indicate that the activities were beyond her functional ability. Adams stated that "she felt a pop in her back" while camping, but she did not indicate that she was engaging in activities that exacerbated her impairments. (AR 541). Adams stated that she tripped over a garden gate, but she did not indicate that activities consistent with gardening were what caused her symptoms, and she speculated that it was possible that planting "may be an irritation to the back." (AR 885, 894). Adams at no point indicated that these activities were beyond her

functional ability. However, as with her ability to lift her grandchildren, even if the ALJ erred in her discussion of Adams's ability to camp, garden, and walk in the woods, it was harmless error. The ALJ did not solely rely on these activities in her decision. On the contrary, the ALJ discussed Adams's subjective symptoms throughout the decision and relied both on objective medical evidence and Adams's daily activities. The ALJ lumped Adams's ability to garden, camp, walk in the woods, and lift her grandchildren in one sentence to contradict her testimony regarding her abilities, and the rest of the decision discusses other objective evidence and details of Adams's activities in detail to contradict her claims. (AR 22). The ALJ noted that Adams could perform light chores such as cooking, cleaning, laundry, and taking care of pets, and that she was independent in taking care of her personal needs outside of needing help with boots and shoes and getting in and out of the bathtub. (AR 21). The ALJ also noted that MRI imaging showed very few changes from June 2015 through May 2018. (AR 23). The ALJ further relied on "functionally normal strength, sensation, and reflexes throughout [the medical record], and only mildly limited range of motion" in finding her subjective pain symptoms to be not as severe as Adams alleged. (AR 26). The ALJ did not solely rely on Adams's recreational activities, and any error in including them in the subjective symptom analysis was harmless. The ALJ properly supported her decision with substantial evidence.

### D. Medical Opinion Evidence

Adams argues that the ALJ failed to consider the opinion of her occupational therapist, Shirley Drier. Adams acknowledges that the ALJ discussed Drier's evaluation, but she asserts that the ALJ did not identify whether this report was weighed as an opinion, nor does the ALJ explain how her report was evaluated. The Commissioner responds by noting that the ALJ

considered Drier's evaluation as an opinion, and that Drier is not considered an acceptable medical source. 20 C.F.R. § 404.1502.

As an initial matter, Adams's assertion that the ALJ should have assigned weight to Drier's evaluation as a medical opinion is in error. Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2). This so called "treating physician rule," however, was eliminated for claims – such as Adams's – filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. §§ 404.1520c [and] 416.920c (2017)." *Id.* The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather she evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c.

Furthermore, as the Commissioner states, occupational therapists are not considered acceptable medical sources under the regulations. 20 C.F.R. § 404.1502. "Acceptable medical sources" are limited to physicians, psychologists, optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. *Id.* Evidence from other medical sources, such as occupational therapists, is insufficient establish the existence or severity of a claimant's impairments. *Id.* However, opinions from sources not considered acceptable medical sources can still provide evidence categorized and considered as medical opinions. *Id.*; 82 F. Reg. 15263.

When considering the persuasiveness of any medical opinion, an ALJ now must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment

relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. § 404.1520c; *see Inmam v. Saul*, No. 1:20-CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021). "The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination." *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency," on the other hand, means that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from the other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

   Drier evaluated Adams on July 8, 2019, and provided a functional evaluation report. In the physical assessment, Drier noted that Adams frequently changed from sitting to standing throughout the evaluation, observing that Adams stood with a "wide base of support and with minimal weight bearing on left." (AR 941). Adams reported pain on lumbar forward flexion. (*Id.*). She showed slightly reduced range of motion in upper and lower extremities, but was still within "functional limits." (*Id.*). Drier noted that Adams had an antalgic gait on all surfaces, including walking to and from the clinic in the parking lot. (*Id.*). She was only able to stand

with feet together for ten seconds, she was unable to stand in tandem or with feet in line, and she was unable to lift her right leg up and put full weight on her left. (*Id.*). She was able to pick up a pen from the floor, but she had a "slow, wide based squat and full arm support." (*Id.*). She was able to lift three pounds from a chair waist height, but she was unable to lift three pounds from a shelf or overhead. (*Id.*).

Drier opined that Adams would be able to: sit for fifteen minutes at a time with the need to change positions frequently; stand for ten minutes; occasionally reach above shoulder with no weight; occasionally reach below the shoulder; lift a maximum of three pounds from twelve inches to knuckle; occasionally to frequently grasp; and occasionally to frequently use fine motor skills. (AR 942). Drier opined that Adams would be unable to stoop, crouch, kneel, twist, crawl, climb stairs, lift from floor to knuckle, lift from knuckle to shoulder, lift above the shoulder, or carry. (*Id.*). Drier opined that Adams was consistent in her presentation, and that the abilities observed matched her reported functional abilities in activities of daily living. (*Id.*).

The ALJ found Drier's opinion to be not persuasive and inconsistent. (AR 25). While Drier indicated that her observations were consistent with Adams's report of daily activities, the ALJ found that there was no objective basis upon which to find this assessment more reliable than the "longitudinal observations of the claimant's treating providers." (AR 24-25). The ALJ therefore stated that she gave "greater credence to the longitudinal evidence when arriving at the above-defined residual functional capacity." (AR 25).

Adams asserts that the ALJ failed to explain whether she weighed Drier's evaluation as an opinion, and that the ALJ failed to consider evidence that supported Drier's opinion. Adams seems to assert that the ALJ did not properly explain how Drier's evaluation was not consistent with the longitudinal evidence. However, while the ALJ may not have specifically provided this

information in the paragraph regarding Drier's evaluation, the ALJ did provide a lengthy discussion and analysis of the medical evidence throughout the decision. We read the ALJ's decision as a whole and with common sense. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek*, 226 F.3d at 811. Throughout the decision, the ALJ relied on treatment notes indicating 5/5 strength, intact sensation and reflexes, and improving gait. (AR 23). The ALJ also noted that in an evaluation in November 2015, Adams was able to lift weight consistent with work at light exertion, and she did not demonstrate any significant limitations in her ability to perform postural or environmental non-exertional activities. (AR 24). The ALJ discussed that Adams's provider indicated she had reached maximum medical improvement from her surgery in December 2015, and that her November 2015 evaluation accurately represented her level of functioning. (*Id.*).

Throughout late 2016 and early 2017, the ALJ noted that although Adams had some diminished sensation and strength in her left leg and decreased lumbar range of motion, she retained normal range of motion in her lower extremities and a normal gait. (*Id.*). Notes from August 2018 show that although Adams reported increased pain symptoms, injections and massage therapy provided relief. (*Id.*). She exhibited some tenderness in her lumbar spine, but retained normal flexion and extension, normal reflexes, normal sensation, and normal motor functioning of the bilateral lower extremities. (*Id.*). In May 2019, the ALJ observed that Adams reported some weakness and joint pain, but she denied falls or myalgia. (*Id.*). She also exhibited a normal gait and station, with negative straight leg raising, and full 5/5 strength in all extremities. (*Id.*). In a page and a half long discussion of how the RFC is supported by the evidence, the ALJ again provides a thorough discussion of Adams's impairments and the medical evidence. (AR 25-26). The ALJ relied on the evidence discussed above and considered

Adams's subjective complaints. Ultimately, the ALJ found that Adams "regularly demonstrates functionally normal strength, sensation, and reflexes throughout, and only mildly limited range of motion, which has been accounted for in the residual functional capacity." (AR 26).

While the ALJ referred to Drier's opinion as an evaluation, rather than an opinion, she discussed the persuasiveness of the opinion as she did all the other medical opinion evidence. The ALJ did not err in her evaluation of Drier's opinion, as she properly discussed the evidence throughout the opinion and found that Drier's opinion was inconsistent with the evidence in the record.

### E.  RFC Assessment

Adams argues both that the ALJ erred in the RFC assessment and that the ALJ's hypothetical to the VE was faulty. However, the ALJ's RFC and the hypothetical to the VE are identical, and therefore the Court will only discuss whether the ALJ erred in the RFC assessment, which is the crux of Adams's argument for both issues. Adams asserts that the ALJ failed to consider her mental impairments and failed to provide limitations for reaching and grasping due to her cervical spine impairments.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many

> other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1995); *see* 20 C.F.R. §404.1545(a)(3). Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) ("The ALJ satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence."). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Id.* at 657-58 (citing *Rice*, 384 F.3d at 371); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

Adams asserts that the ALJ should have including reaching and grasping limitations in the RFC due to her cervical impairment. The ALJ found Adams's mild degenerative disc disease of the cervical spine to be a non-severe impairment. (AR 18). The ALJ noted that Adams exhibited no more than a mildly reduced range of motion in her cervical spine, and she retained full range of motion in her bilateral upper extremities. (*Id.*). The ALJ also noted that Adams "routinely exhibits functionally normal strength, sensation, and reflexes throughout the bilateral upper extremities, as well as normal grip strength and no difficulty with fine or gross manipulation activities of the bilateral hands." (*Id.*). Finally, the ALJ noted that despite isolated pain reports, Adams received no long-term treatment for issues with her cervical spine. (*Id.*).

Adams lists medical records that she argues the ALJ failed to take into account when discussing her cervical impairment. She points to an MRI from 2018 that shows multilevel degenerative changes in the cervical spine. (AR 536). However, the ALJ acknowledged that Adams has the medically determinable impairment of mild degenerative disc disease of the cervical spine, consistent with the 2018 MRI, but found that it was non-severe because it did not result in more than minimal limitation in the ability to perform work-related activities. (AR 18). The ALJ relied on several treatment notes in finding that Adams's cervical impairment was non-severe and did not require further limitations in the RFC. The ALJ relies on evidence that shows no more than mildly reduced range of motion in the cervical spine, normal range of motion in the upper extremities, and normal strength, sensation, and reflexes through the upper extremities. (*Id.*). Adams may disagree with the ALJ's analysis, but the ALJ has provided the proper logical bridge and supported her decision with substantial evidence.

Adams also asserts that she did receive ongoing treatment for her cervical impairment due to deficits in her arms and hands, despite the ALJ's finding that she did not receive regular treatment. However, Adams only cites to instances where she reported numbness in her right arm or hand, as well as a single treatment note indicated tenderness along her cervical spine. Adams has failed to support her own argument that she received ongoing treatment for her cervical impairment or suffered from ongoing functional limitations as a result of her cervical impairment. Adams has shown that she reported some symptoms of numbness, but she has not shown that she was receiving treatment for her impairment. Therefore, the ALJ did not err in finding Adams received no ongoing treatment for her cervical spine impairment.

Adams also alleges that the ALJ erred in finding her mental impairments to be non-severe and in failing to fully develop the record with regard to her mental impairments. Plaintiff has the

burden of proof in providing evidence to support her claim for disability.  *Clifford*, 227 F.3d at 868.  The ALJ found Adams's mental impairments to be non-severe after reviewing the four areas of mental functioning in the paragraph B criteria.  (AR 18).  The ALJ noted that the only testimony related to mental impairments at the hearing was that Adams was more fatigued and forgetful recently, but she attributed these symptoms to difficulty sleeping.  (*Id.*).  The ALJ also found that information from Adams's husband, friends, and family revealed no issues with mental impairments.  (*Id.*).  Finally, the ALJ noted that Adams's only treatment for mental health impairments consisted of medication, which improved symptoms, and that she acknowledged she has not had any other mental health treatment.  (AR 19).  Adams improperly asserts that the ALJ should have requested a consultative examination or medical opinion regarding Adams's mental health, but the ALJ does not hold the burden of proof with regard to providing evidence.  *Clifford*, 227 F.3d at 868.  The ALJ properly supported her finding that Adams's medical impairments are non-severe with substantial evidence.

      Adams argues that the ALJ failed to account for even her mild limitations in the paragraph B criteria in the RFC without explanation.  However, the ALJ here provided explanation as to why the RFC does not include limitations.  The ALJ noted that although Adams has a mild limitation in concentrating, persisting, and maintaining pace, the evidence showed that "there is no reason to believe that the claimant would be unable to focus, persist, or maintain pace from a mental standpoint sufficient to perform work-related activities as long as she was able to access her medications."  (AR 20).  The ALJ found that Adams also has a mild limitation in adapting or managing herself, but "the evidence of record does not support a finding her difficulty adapting to her impairments extends into a work environment, and thus, there is no

support for finding any limitation in this area." (*Id.*).  The ALJ properly explained her reasoning for not including limitations in the RFC to accommodate Adams's mental impairments.

Adams also argues that the ALJ failed to consider the combined effects of her impairments.  However, Adams does not provide any evidence as to which of her impairments should have been considered in combination or what further limitations those impairments cause.  Her argument is mere speculation that her impairments might aggravate other impairments in combination.  Adams has not provided any evidence to support her argument that the ALJ ignored evidence that her impairments considered in combination would require further limitations.

Finally, Adams argues that the ALJ did not include information from the VE's testimony regarding absences and off-task time in the RFC assessment.  The VE testified that in order to hold full-time employment, only one absence per month would be tolerated, and only 10% off-task time (outside of regular breaks) would be tolerated.  (AR 62-63).  Once again, Adams fails to provide evidence that she would require more absences and off-task time than allowed by the VE's testimony.  Adams's only statement supporting her argument is that the decision "does not address evidence showing [Adams] could not meet the requirements described by the VE, and the ALJ did not confront evidence showing [Adams] could not tolerate full time employment." [ECF 20 at 24].  She does not cite to or discuss any evidence that would support this statement.  Without any evidence or testimony supporting her assertion that she could not meet the requirements for employment as described by the VE, "there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).  The ALJ, however, cited to evidence from Adams's most recent employer, which indicated that Adams has not demonstrated any issues in maintaining

attendance or punctuality, nor has she required any unscheduled breaks.  (AR 20, 254-546).  The ALJ properly supported her finding with substantial evidence.

In sum, none of Adams's arguments reasonably support a finding that the ALJ failed to support her decision with substantial evidence.  Consequently, the Commissioner's final decision will be AFFIRMED.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Adams.

SO ORDERED.

Entered this 3rd day of March 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge